Ryan Ballard, ISBN 9017
Ballard Law, PLLC
P.O. Box 38
Rexburg, ID 83440
(208) 359-5532
ryanballardlaw@gmail.com

Attorney for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JAMES BRACK MCMURTREY, | ) Case No.: 1:16-cv-112 |
| ) | |
| Plaintiff, | ) |
| v. | ) **COMPLAINT** |
| ) | |
| LVNV FUNDING, LLC, a Delaware limited liability company, FIRST NATIONAL COLLECTION BUREAU, INC., a Nevada corporation. | ) |
| ) | |
| Defendants. | ) |

COMES NOW the Plaintiff James Brack McMurtrey, by and through his counsel of record, Ryan A. Ballard of Ballard Law, PLLC, and alleges his causes of action against Defendants as follows:

1. This is an action for damages brought by an individual consumer for Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (hereinafter "FDCPA"), which prohibits debt collectors from engaging in abusive, deceptive, and unfair practices.

2. Plaintiff James Brack McMurtrey is a natural person residing in Twin Falls County, Idaho, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

3. Defendant LVNV Funding is a Delaware limited liability company engaged in the business of collecting debts, using mails and telephone, in this state with its principal place of business located at 625 Pilot Road, Suite 3, Las Vegas, NV 89119.

Case 1:16-cv-00112-JCC   Document 1   Filed 03/16/16   Page 2 of 7

4. LVNV Funding is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

5. LVNV Funding is licensed to do business in Idaho and can be served through its registered agent, Corporation Service Company, 12550 West Explorer Dr., Suite 100, Boise, ID 83713.

6. Defendant First National Collection Bureau, Inc., is a Nevada corporation engaged in the business of collecting debts, using mails and telephone, in this state with its principal place of business located at 70 Mansell Court, Suite 250, Roswell, GA 30076.

7. First National Collection Bureau is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

8. First National Collection Bureau is licensed to do business in Idaho and can be served through its registered agent, Lexis Nexis Document Solutions, Inc., 12550 West Explorer Dr., Suite 100, Boise, ID 83713.

9. This Court has jurisdiction under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

10. Venue is proper in this District because the acts and transactions occurred here and all the parties reside or transact business here.

11. LVNV Funding is a company which purchases charged-off debts for pennies on the dollar and then enlists collection agencies to aid in collection of those debts.

12. LVNV Funding has contracted with First National Collection Bureau to perform collection efforts on debts allegedly owed by Idaho residents.

13. Those collection efforts include mailing letters to Idaho residents.

14. First National Collection Bureau functions as an agent of LVNV Funding.

15. On or about January 16, 2016, First National Collection Bureau sent a letter to Mr. McMurtrey (attached as Exhibit A) regarding a debt it alleged he owed to LVNV Funding.

16. The total due listed was $16,027.66.

17. The letter contained an offer to settle the alleged debt for six month payments totaling $6,411.06.

18. The letter also contained the following disclaimer: "The law limits how long you can be sued on a debt. Because of the age of your debt, LVNV Funding LLC will not sue you for it. If you do not pay the debt, LVNV Funding LLC may report or continue to report it to the credit reporting agencies as unpaid."

19. The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

20. "[T]he FDCPA is a remedial statute aimed at curbing what Congress considered to be an industry-wide pattern of and propensity towards abusing debtors." *Clark v. Capital Credit & Collection Services, Inc.,* 460 F.3d 1162, 1171 (9th Cir.2006).

21. It prohibits, and imposes strict liability and both statutory and actual damages for, a wide range of abusive and unfair practices. *Donohue v. Quick Collect, Inc.,* 592 F.3d 1027, 1030 (9th Cir.2010).

22. In the Ninth Circuit, the standard to determine whether a communication is deceptive or misleading under § 1692e is whether the "least sophisticated consumer" could have been deceived or misled. *Wade v. Reg'l Credit Ass'n,* 87 F.3d 1098, 1100 (9th Cir.1996).

23. To answer this inquiry, the Ninth Circuit recently adopted a "materiality" approach used by the Sixth and Seventh Circuits. Under this rule, "false but nonmaterial representations are not likely to mislead the least sophisticated consumer and therefore are not actionable under §§ 1692e or 1692f." *Donohue,* 592 F.3d at 1033.

24. An FDCPA plaintiff need not even have actually been misled or deceived by the debt collector's representation; instead, liability depends on whether the *hypothetical* "least sophisticated debtor" likely would be misled. *E.g., Gonzales v. Arrow Fin. Servs., LLC,* 660 F.3d 1055, 1061 & n. 2 (9th

Cir.2011); *Terran v. Kaplan,* 109 F.3d 1428, 1431 (9th Cir.1997).

25. LVNV is able to purchase many debts at a steep discount because the statute of limitations on the debt has expired.

26. On January 30, 2012, another national debt buyer, Asset Acceptance, was sued by the United States of America in the Middle District of Florida for imprudent collection practices.

27. Part of the allegations of that petition read as follows:

> **<u>Defendant's Practices When Collecting Debts Beyond the Statute of Limitations</u>**
>
> 30. Because Asset Acceptance regularly collects older debt, and because its business strategy includes holding the debt it purchases for several years, a large percentage of the individual accounts it collects are past the statute of limitations.
>
> 31. The statute of limitations for any given debt can vary from as short as two to three years to as long as fifteen or more years, and depends on several factors, including the date that the debt was last paid or went into default, the law governing the limitations period for the type of debt (e.g., telecommunications, credit card, health club, etc.), whether the debt is based on an oral or written contract, and whether the debt is the result of a judgment. A debt that is past the statute of limitations can be revived in many states if the consumer either makes a payment on the debt or states, in writing, an intention to pay it.

28. In that petition, the United States alleged the following:

> 33. Asset tracks the date that it believes any given account will go past the statute of limitations. Collectors are trained how to collect past-statute debts, and are taught that the debt will be revived if the consumer makes a partial payment on such a debt. When a consumer cannot pay a debt in full, but can pay something, Asset will enter into a payment plan with that consumer.

29. The United States alleged the problems for the consumers when a debt buyer is collecting these stale debts as follows:

34. Many consumers do not know if the accounts that Asset is attempting to collect are beyond the statute of limitations. Consumers also do not realize that making a partial payment on a debt, or making a written promise to pay will, in many instances, revive the debt. When Asset contacts consumers to collect on a debt, many consumers believe they could experience serious negative consequences, including being sued, if they fail to pay the debt. Similarly, many consumers believe that making a partial payment on a debt in response to Asset's collection efforts is a positive action that can avert the negative consequences of nonpayment. If consumers knew, in connection with a past-statute debt, that Asset had no legal means to enforce collection of the debt, or understood that making a partial payment or a written to promise to pay would revive it, some consumers would likely choose not to make a payment or a written promise to pay.

30. Idaho is a state that has a revival statute such as the one the United States was concerned about in its petition against Asset Acceptance.

31. Idaho Code § 5-238 states in relevant part: ". . . any payment of principal or interest is equivalent to a new promise in writing, duly signed, to pay the residue of the debt."

32. As a result of the litigation, the United States and Asset Acceptance entered into a Consent Decree.

33. As part of the Consent Decree, Asset Acceptance agreed to include the following language in any demand for debt upon which the statute of limitations has expired: "The law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it. If you do not pay the debt we [Asset Acceptance, LLC], may [continue to] report it to the credit reporting agencies [as unpaid].

34. Presumably LVNV Funding and First National Collection Bureau were aware of the Consent Decree since they used the model language.

35. However, in spite of this warning and Defendants' knowledge of the staleness of this debt, Defendants offered to settle the debt at discount of 60 percent off in six monthly payments of $1,068.51.

36. In Idaho, the net effect of paying one of the six monthly settlement payments of $1,068.51 is to revive the full $16,027.66.

37. In Idaho, once that first payment of $1,068.51 is made, the following statement is no longer true: "the law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it."

38. This is exactly the type of concern the United States had when it sued Asset Acceptance as described in paragraph 34 of the complaint quoted above, where consumers were lulled into thinking that a partial payment was a way to avoid negative consequences.

39. This conduct violates 15 USC § 1692e(2)(A) which prohibits the false representation of the character, amount, or legal status of any debt; and 10) prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

40. The above-described acts are misleading to the least sophisticated consumer.

41. The misrepresentation is material because the least sophisticated consumer could be tricked into reviving an out-of-statute debt by entering into a payment plan or settlement agreement.

42. Mr. McMurtrey is entitled to statutory and actual damages due to Defendants' violation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for a judgment against Defendants as follows:

A. Actual damages pursuant to 15 U.S.C. § 1692k(a)(1),

B. Statutory damages up to $1,000.00 per Defendant pursuant to 15 U.S.C. § 1692k(a)(2)(A),

  C. Costs and reasonable attorney fees pursuant to 15 U.S.C. § 1692k(a)(3),

  D. In the event of default judgment, for attorney fees in the amount of $2,000.00,

  E. For Court costs; and

  F. For such other and further relief as may be just and proper.

DATED: March 16, 2016.

/s/ Ryan A. Ballard
Ryan A. Ballard
Ballard Law, PLLC
